THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America | Cr. No. 0:17-00609-CMC |
| v. | |
| ANTHONY CHRISTOPHER SHANNON, JR. | **OPINION and ORDER** |
| Defendant. | |

## I. Introduction.

On October 8, 2020, Anthony Christopher Shannon, Jr. ("Shannon") filed the instant counseled motion under 28 U.S.C. § 2255. ECF No. 56. In his motion, Shannon challenges as invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his guilty plea, conviction, and resulting sentence for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 56. In *Rehaif*, the Supreme Court held in order to sustain a conviction under §§ 922(g) and 924(a)(2), "the Government must prove both that the defendant possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200.

The Government filed its response on December 8, 2020. ECF No. 65. Shannon filed his reply to the Government's response on December 28, 2020. ECF No. 69. This matter is ripe for resolution.

## II. Relevant Procedural Background

On July 5, 2017, a federal grand jury indicted Shannon on three different counts. ECF No. 3. Count 2 of the indictment ("the Indictment"), the sole count at issue in Shannon's instant §

2255 motion, charged him with being a felon in possession of a firearm and ammunition, specifically charging:

> That on or about February 15, 2016, in the District of South Carolina, the Defendant, ANTHONY CHRISTOPHER SHANNON, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce a firearm, that is a Jimenez Model JA-32, .32 caliber pistol and .32 caliber ammunition all of which had been shipped and transported in interstate and foreign commerce;

> In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

ECF No. 3 at 2. Count 1 charged Shannon with possession with intent to distribute and distribution of a quantity of cocaine base, commonly known as "crack cocaine," a Schedule II controlled substance; and Xanax, a Schedule IV controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D) and (b)(2). *Id.* at 1. Count 3 charged Shannon with carrying a firearm during and in relation to and possession of a firearm in furtherance of a drug trafficking crime, as outlined in Count 1, which is prosecutable in a court of the United States, in violation of 18 U.S.C. § 924(c)(1). *Id.* at 2.

On September 20, 2017, Shannon pled guilty to Counts 2 and 3 of the Indictment pursuant to a plea agreement he entered with the Government the same day.[1] ECF Nos. 33, 34, 35, 62 at

---

[1] The Plea Agreement contained language whereby Shannon waived his rights to pursue an appeal or file a motion under 28 U.S.C. § 2255 with limited exceptions. ECF No. 33 at 6. The Government does not argue this waiver applies or seek to enforce it in any way. Therefore, this court will not address the matter further. *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (declining to enforce *sua sponte* an appeal waiver in a plea agreement because the Government did not seek to enforce it).

2

12–13, 18–20.  During the plea colloquy, the Government gave the following recitation of facts it

would be able to show if Shannon elected to go to trial:

> [O]n February 15th of 2016, Rock Hill Police Department received a 911, a hangup call from 1354 Coronet Court, Apartment B.  [Rock Hill Police Department] goes to the apartment and they hear a child inside.  No one is coming to the door when they're knocking on the front door of that apartment.  Eventually they get the landlord who actually managed the apartment to open it.
>
> When they enter there are various individuals in there as well as a smaller child.  Mr. Shannon -- it's a two-story apartment -- walks down from the top. . . . He doesn't have a child in his hands.  He just walks down from the top.  And the cop asks him who he is and asks for his ID.  Mr. Shannon says it's upstairs.
>
> He goes up.  A few moments pass and Mr. Shannon doesn't come back downstairs.  The officer goes up to the upstairs.  Mr. Shannon is nowhere to be found in it.  He finds on the second story a bedroom window open, presuming that Mr. Shannon has fled from it.
>
> Based on the smell of marijuana, they end up getting a search warrant for the apartment.  And in the attic of that apartment they find a backpack that has both marijuana, Xanax, multiple baggies of crack cocaine, and the Jimenz JA-32 model pistol loaded in that backpack.
>
> One of the – the marijuana was contained in a mason jar.  On a mason jar a latent fingerprint was pulled that was in the backpack that matched Mr. Shannon.
>
> In addition, we consulted an internet nexus expert who showed that the Jimenez Model JA-32 traveled in inter[state] and foreign commerce, as well as the ammunition that was in the pistol.
>
> At the date this occurred, Mr. Shannon was a felon, being convicted of strong-arm robbery on August 29th, 2012[2] in South Carolina, which is an offense which carries a sentence of more than one year.
>
> Finally, in the bedroom where the window was open, there was other mason jars of marijuana found as well as Mr. Shannon's wallet and ID.

---

[2] The Government misspoke regarding the significance of this date to Shannon's South Carolina state court conviction for strong arm robbery.  Shannon actually committed the offense on August 29, 2012, and was convicted of it on January 7, 2013.  ECF 49 at ¶ 31, 65-1 at 1.

ECF No. 62 at 46–47. In response to follow up questions by the court, the Government also represented "in the backpack was marijuana, Xanax, and baggies of crack cocaine, all of which have been tested." *Id.* at 47. Although the Government expressly represented the crack cocaine tested positive, *id.* at 47, the full context of the court's exchange with the Government implies unequivocally the marijuana and Xanax tested positive as well, *id.* at 47–48.

Following the Government's factual recitation, Shannon answered questions by the court, affirmatively admitting: (1) on February 15, 2016, he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) on the same date, he was knowingly in possession of the firearm, because he either had the firearm on him or because he knew where it was and it was "basically" his; and (3) the firearm had traveled in interstate commerce. *Id.* at 48. The court went through the same process with respect to Count 3. *Id.* at 48–49.

After the court confirmed Shannon understood all the court had gone over and Shannon had no questions, Shannon pled guilty to Counts 2 and 3. ECF Nos. 33, 35, 62 at 49. In accordance with the terms of the plea agreement, the Government made a motion to dismiss Count 1 at Shannon's sentencing hearing, which motion the court granted. ECF Nos. 33, 34, 46, 51 at 13–14. Notably, in conducting the plea colloquy with respect to Count 2, the court followed then current law and did not advise Shannon that knowledge he had been convicted of a crime punishable by imprisonment exceeding one year at the time he possessed the firearm and ammunition at issue was an element of the offense. *See United States v. Langley*, 62 F.3d 602, 604–08 (4th Cir. 1995) (*en banc*) (holding defendant's knowledge of his felony status is not

essential element of offense under §§ 922(g)(1) and 924(a)(2)), *abrogated by Rehaif*, 139 S. Ct. at 2194.

Shannon's Presentence Investigation Report ("the PSR") set forth the information necessary to calculate his advisory sentencing range under the United States Sentencing Guidelines ("the Guidelines"). ECF No. 49. Based upon such information, the PSR calculated Shannon's total offense level for Count 2 at 17 and his criminal history category at V, producing an advisory sentencing range under the Guidelines of 46 to 57-months imprisonment. ECF Nos. 49 at ¶ 72; 49-1 at 1. As to Count 3, the applicable Guidelines dictated Shannon's sentence be the minimum term of imprisonment required by statute, which was 60-months imprisonment, to run consecutively to any other term of imprisonment imposed. ECF Nos. 49 at ¶ 72; 49-1 at 1.

Considering Shannon's young age of twenty-three at the time he pled guilty to Counts 2 and 3 of the Indictment, he has an extensive criminal history starting at age seventeen. ECF No. 49 at ¶¶ 29–33. With respect to Shannon's criminal history, the PSR reported, *inter alia*, he had been convicted of the following six crimes punishable by imprisonment for a term exceeding one year: (1) a 2013 conviction for South Carolina common law robbery (*aka*, strong arm robbery), *State v. Rosemond*, 560 S.E.2d 636, 640 (S.C. Ct. App. 2002), *aff'd as modified*, 589 S.E.2d 757 (S.C. 2003), for which he received an indeterminate sentence of imprisonment not to exceed six years under South Carolina's Youthful Offender Act ("YOA"), S.C. Code Ann. § 24-19-50 (2007),[3] with credit for time served (99 days), ECF Nos. 49 at ¶ 31, 65-1; (2) a 2013 conviction

---

[3] The YOA permits South Carolina state courts to cap the maximum penalty for certain offenders at six years in custody. S.C. Code Ann. § 24-19-50 (2007).

for assault and battery, second degree, in violation of South Carolina Code § 16-3-600(D)(1), S.C. Code Ann. § 16-3-600(D)(1) (2015 & Supp. 2020), for which he received an indeterminate sentence of imprisonment not to exceed three years under South Carolina's YOA, with credit for time served (99 days), to run concurrent with his conviction for South Carolina common law robbery as just mentioned, ECF Nos. 49 at ¶ 31, 65-2; (3) a 2013 conviction for burglary, second degree, in violation of South Carolina Code § 16-11-312(B), S.C. Code Ann. § 16-11-312(B) (2015), for which he received a sentence of time served (99 days), ECF Nos. 49 at ¶ 30, 65-3; (4) a 2013 conviction for attempted burglary, second degree, in violation of South Carolina Code § 16-11-312(B), S.C. Code Ann. § 16-11-312(B) (2015), for which he received a sentence of time served (99 days), ECF Nos. 49 at ¶ 30; 65-4; (5) a 2014 conviction for assault and battery, second degree, in violation of South Carolina Code § 16-3-600(D)(1), S.C. Code Ann. § 16-3-600(D)(1) (2015 & Supp. 2020), for which he received a sentence of time served (46 days), ECF Nos. 49 at ¶ 32, 65-5; and (6) a 2017 conviction for assault and battery of a high and aggravated nature in violation of South Carolina Code § 16-3-600(B)(1), S.C. Code Ann. § 16-3-600(B)(1) (2015), for which he received a sentence of one year imprisonment with credit for 369 days of time served, ECF Nos. 49 at ¶ 33, 65-6.

Shannon raised only one objection to the PSR prior to sentencing, which the Probation Officer resolved, leaving no outstanding objections to the PSR by the time of Shannon's sentencing hearing on January 24, 2018.[4]  ECF No. 45.  The district court orally pronounced Shannon's

_____

[4] Shannon was sentenced under the 2016 Guidelines Manual, effective November 1, 2016, which remained in effect through October 31, 2018.  ECF 49 at ¶ 44.

sentence at the conclusion of the sentencing hearing, and, the next day, entered its written judgment, sentencing Shannon to a total term of 106-months imprisonment, consisting of 46 months as to Count 2 and 60 months as to Count 3, to run consecutively, and to five-years supervised release.  ECF No. 46.  Shannon did not file a direct appeal.

On October 2, 2020, Shannon filed a *pro se* motion to appoint counsel to file a § 2255 motion on his behalf, raising a *Rehaif* claim.  ECF No. 52.  The court granted the motion on October 6, 2020, ECF No. 53, resulting in the filing of Shannon's instant § 2255 motion two days later on October 8, 2020, ECF No. 56.  In it, Shannon seeks vacatur of his conviction and sentence on Count 2, based upon *Rehaif* and *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), *cert. granted*, No. 20-444, 2021 WL 77245 (U.S. Jan. 8, 2021) (oral argument held Apr. 20, 2021).  The Government filed its response on December 8, 2020, seeking dismissal of Shannon's § 2255 motion as untimely.  ECF No. 65 at 3–4.  In its response, the Government alternatively moves for summary judgment, contending, *inter alia*, Shannon procedurally defaulted his *Rehaif* claim, and he cannot overcome the default.  *Id.* at 4–19.  On December 28, 2020, Shannon filed a reply to the Government's response, the substance of which was written in his own hand.  ECF Nos. 69, 69-1.  Shannon's handwritten reply addressed only the Government's timeliness challenge, saying nothing about, for example, the Government's contention he procedurally defaulted his *Rehaif* claim.[5]

---

[5] Shannon's counsel did not separately substantively respond to the Government's untimeliness challenge or to its motion for summary judgment.

The court will first address the Government's untimeliness challenge to Shannon's § 2255 motion and then turn to the Government's alternative motion for summary judgment.

### III. The Government's Untimeliness Challenge.

The statutory authorization for a federal prisoner to file a motion attacking his or her sentence is found in 28 U.S.C. § 2255(a), which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The time period for filing such a motion is found in 28 U.S.C. § 2255(f), which provides a federal prisoner has one year to file a motion for relief from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f).

The Government contends Shannon's § 2255 motion is untimely under § 2255(f). The court agrees. Because Shannon did not file a direct appeal, his conviction became final fourteen days after entry of judgment when the fourteen-day notice-of-appeal period expired. *United States*

8

*v. Diallo*, 581 Fed. App'x 226, 227 (4th Cir. 2014) (*per curiam*) (citing *Clay v. United States*, 537 U.S. 522, 525 (2003) and Fed. R. App. P. 4(b)(1)(A)(i), (b)(6) for proposition defendant's non-appealed federal conviction became final when time expired for filing notice of appeal); *cf. Clay*, 537 U.S. at 525 (holding judgment of conviction becomes final when time expires for filing petition for *certiorari* contesting appellate court's affirmance of conviction). Here, the district court entered Shannon's judgment on January 25, 2018, and thus his conviction became final on February 9, 2018. Shannon did not file his § 2255 motion within one year of February 9, 2018, and thus, he cannot show he timely filed his § 2255 motion under § 2255(f)(1). Shannon also cannot show timely filing under § 2255(f)(2), because there is no allegation, let alone any evidence to suggest, governmental action in violation of the Constitution or laws of the United States prevented him from filing his instant § 2255 motion. Similarly, Shannon cannot show timely filing under § 2255(f)(4) because Shannon's *Rehaif* claim in his § 2255 motion does not depend upon the discovery of facts supporting such claim.

This state of affairs leaves only § 2255(f)(3) upon which to consider the timeliness of Shannon's § 2255 motion. To review, § 2255(f)(3) provides a § 2255 motion is timely if it is filed within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." 28 U.S.C. § 2255(f)(3). Here, Shannon bases his challenge to his guilty plea, conviction, and sentence with respect to Count 2 upon the Supreme Court's decision in *Rehaif*, which issued June 21, 2019. 139 S. Ct. at 2191. Assuming *arguendo Rehaif* announced a new right made retroactive to cases on collateral review, in the absence of equitable tolling, the latest possible date Shannon could have timely filed a § 2255 motion raising

a *Rehaif* claim was June 21, 2020, by delivering it to prison authorities for mailing. *See* 28 U.S.C. § 2255(f)(3); *Houston v. Lack*, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule). This he did not do.

On the basis Shannon did not file the instant § 2255 motion until well over one year after the Supreme Court decided *Rehaif*, the Government seeks the motion's dismissal as untimely. ECF No. 65 at 3–4. As previously noted, the substance of Shannon's reply to the Government's untimeliness challenge is written in his own hand. ECF No. 69-1. He only offers a vague and confusing explanation for his delayed filing. Giving Shannon the benefit of every doubt, through such explanation, he seeks equitable tolling of § 2255(f)'s one-year statute of limitations for 80 days from April 2, 2020 through June 21, 2020, on the basis he had limited or no access to the cases he needed, a law library, or legal advice.[6] According to Shannon, of those 80 days, he spent 60 days on a modified recreational schedule of one hour and thirty minutes of recreational time, three times per week, and 20 days on 24-hour lockdown. ECF No. 69-1 at 1–2. Shannon asserts the first 10 days of 24-hour lockdown followed immediately after George Floyd's death on May 25, 2020, and the second 10 days of 24-hour lockdown followed immediately after a race riot in his housing unit. *Id.* In the final paragraph of Shannon's hand-written reply, he asserts:

> Last but not least[,] the reason I did not file myself is because I was not knowledge[able] on how to file the motion. I asked for help from other inmates [and] staff to assist me in requesting a continuance, and finally I just decide[d] to write the courts. I hope that I[']m giv[en] a chance to still file my motion and the court[] make[s] the time to see into my reasons to understand [there are a lot] of

---

[6] The court notes Shannon states in his hand-written reply that on May 27, 2020, he "received a letter from the court[] stating [he] ha[s] a potential relief . . . ." ECF No. 69-1 at 1. Shannon is completely mistaken in this regard, as the court never sent Shannon a letter or any other document informing him of potential relief from his current federal convictions and sentence.

things that did stop me from filing[:] Covid-19, [G]eorge [F]loyd, race riot in my home unit . . ., lack of education [and] no law library or nothing.

*Id.* at 2.

The court agrees with the Government Shannon's § 2255 motion is untimely under § 2255(f)(3). As the Supreme Court has repeatedly instructed, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (on petition for federal habeas relief by state prisoner)). *See also Whiteside v. United States*, 775 F.3d 180, 184–86 (4th Cir. 2014) (*en banc*) (applying *Holland* test for equitable tolling in considering timeliness of § 2255 motion). Unfortunately for Shannon, even crediting him the full 80 days of equitable tolling he seeks, § 2255(f)'s one-year limitation period would have expired on or about September 9, 2020, 29 days before Shannon, acting through his counsel, actually filed his instant § 2255 motion on October 8, 2020. ECF No. 56. Moreover, giving Shannon the benefit of the six days between the time he filed his October 2, 2020 *pro se* motion to appoint counsel and the time he filed his actual § 2255 motion, Shannon would still be past the filing deadline by 23 days. The court also notes, based upon Shannon's own admission, he had the ability to file a § 2255 motion during these 23 days, but intentionally delayed doing so because he desired assistance from prison staff and his fellow inmates in doing so. The fact Shannon "finally . . . just decide[d] to write the court[]" himself, resulting in his October 2, 2020 motion for appointment of counsel, unequivocally shows he had not pursued his rights diligently and no extraordinary circumstance stood in his way preventing

11

him from filing a § 2255 motion raising a *Rehaif* claim by September 9, 2020. Accordingly, assuming *arguendo* Shannon had until September 9, 2020 to file a § 2255 motion pressing a *Rehaif* claim, no basis exists for the equitable tolling of § 2255(f)(3)'s one-year filing limitation past this date. *Menominee Indian Tribe of Wis.*, 577 U.S. at 257 (equitable tolling not available when litigant is responsible for own delay). Accordingly, the court dismisses Shannon's § 2255 motion as untimely and with prejudice.

### IV. The Government's Alternative Motion for Summary Judgment.

Given the untimeliness of Shannon's § 2255 motion resulting in its dismissal, the court's analysis could end now. However, for the sake of thoroughness, the court will proceed to address the Government's motion for summary judgment on Shannon's § 2255 motion. Assuming *arguendo* Shannon's § 2255 motion is timely and *Rehaif* provides a new substantive rule retroactive to cases on collateral review because it narrowed the class of persons the law punishes, Shannon still would be entitled to no relief on his motion. *See Schriro v. Summerlin*, 542 U.S. 348, 351–53 (2004) (new substantive rule which "alters the range of conduct or the class of persons that the law punishes," falls outside general bar on retroactivity). Shannon has procedurally defaulted his *Rehaif* claim, and he cannot demonstrate either cause and prejudice or actual innocence in order to excuse his procedural default.

In relevant part, § 924(a)(2) provides: "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). Always beginning with the word "who," subsection (g) of § 922 in turn has nine subsections listing nine different statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or

ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* § 922(g). Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," *id.* § 922(g)(1); (2) "who has been adjudicated as a mental defective or has been committed to a mental institution," *id.* § 922(g)(4); or (3) "who, being an alien--(A) is illegally or unlawfully in the United States," *id.* § 922(g)(5).

In *Rehaif*, a jury convicted the petitioner-defendant ("Rehaif") of being an alien unlawfully in the United States in possession of firearms, in violation of §§ 922(g)(5) and 924(a)(2). 139 S. Ct. at 2194. At trial, Rehaif objected to the district court's jury instruction "that the 'United States is not required to prove' that Rehaif 'knew that he was illegally or unlawfully in the United States,'" at the time he possessed the firearms as alleged in the indictment. *Id.* The district court overruled the objection, the jury convicted Rehaif, and the district court sentenced him to 18-months imprisonment. *Id.* Rehaif appealed, challenging the instruction, but the Eleventh Circuit affirmed. *Id.* at 2195. The Supreme Court granted *certiorari*. *Id.*

The *Rehaif* Court posed the question to be answered as follows: "Does [the word 'knowingly' in § 924(a)(2)] mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* at 2194. In the immediately following sentence, the Court answered the question by holding "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* In its conclusion, the

*Rehaif* Court restated its holding as follows: "[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the Defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."[7] *Id.* at 2220.

Shannon argues his conviction and sentence on Count 2 is invalid under *Rehaif* because prior to pleading guilty to Count 2, he was not informed via the Indictment or by the district court that, in a prosecution under §§ 922(g)(1) and 924(a)(2), the Government must prove he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.[8]  ECF No. 56 at 2–3.  Relying on *Gary*, 954 F.3d at 194, Shannon contends the *Rehaif* error is structural, thereby requiring automatic vacatur of his conviction and sentence on Count 2.  ECF No. 56.

The Government moved for summary judgment in its favor on the following grounds: (1) Shannon procedurally defaulted his *Rehaif* claim by failing to raise it on direct review; (2) Shannon cannot demonstrate cause and prejudice to excuse his default; and (3) Shannon cannot demonstrate

---

[7] Citing *Langley*, 62 F.3d at 602, the Fourth Circuit first recognized in *United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020), "[t]he [Supreme] Court's holding in *Rehaif* abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category." *Lockhart*, 947 F.3d at 196.

[8] Notably, Shannon does not argue *Rehaif* also requires the Government to prove, as an element of an offense under §§ 922(g)(1) and 924(a)(2), **he knew the law prohibits** persons who have been convicted of a crime punishable by a term of imprisonment exceeding one year from possessing a firearm or ammunition.  If he had, the court notes it recently rejected the same argument, holding "the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's status under §§ 922(g) and 924(a)(2), and thus does not require the Government to prove he also knew such status put him in a category of persons legally prohibited from possessing a firearm or ammunition." *United States v. Jackson*, Cr. No. 3:17-810-CMC, 2021 WL 694848, at *9 (D.S.C. Feb. 23, 2021).

14

his actual innocence to excuse his default. ECF No. 65 at 4–14. Shannon has not presented any argument regarding procedural default, cause and prejudice, or actual innocence. Shannon bears the burden of proving his grounds for collaterally attacking his guilty plea, conviction, and sentence by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Shannon Procedurally Defaulted his *Rehaif* Claim.

The court agrees with the Government under binding Supreme Court precedent Shannon procedurally defaulted his *Rehaif* claim on collateral review by failing to challenge on direct review the constitutional validity of his guilty plea, conviction, and sentence on Count 2 on the basis the court misinformed him about the elements of the offense. *See Bousley*, 523 U.S. at 621–22 (holding defendant who failed to challenge on direct review constitutional validity of guilty plea to federal offense on basis court misinformed him about elements of the offense procedurally defaulted the claim on collateral review). This is so despite *Gary's* holding *Rehaif* "error is structural, which *per se* affects a defendant's substantial rights," *Gary*, 954 F.3d at 200. *See United States v. Asmer*, Cr. No. 3:16-423, 2020 WL 6827829, at *3–5 (D.S.C. Nov. 20, 2020) (holding defendant who failed to allege *Rehaif* error on direct review from his guilty plea to one count of violating §§ 922(g)(1) and 924(a)(2) procedurally defaulted *Rehaif* claim on § 2255 motion despite *Gary*'s holding *Rehaif* error constitutes structural error), *appeal filed*, No. 21-6064 (4th Cir. Jan. 11, 2021) (appeal held in abeyance since January 15, 2021, pending issuance of a decision by the United States Supreme Court in *Gary*); *see also Clay v. United States*, 833 F. App'x 663 (8th Cir. 2021) (*per curiam*) (holding defendant procedurally defaulted his *Rehaif* claim by failing to raise *Rehaif*-type claim at any time prior to his § 922(g)(1) conviction or on direct appeal); *Cherry v.*

*United States*, Civ. No. 2:20cv298, 2020 WL 6480921, at *1 (E.D. Va. Nov. 4, 2020) (same), *appeal filed*, No. 21-6011 (4th Cir. Jan. 5, 2021) (appeal held in abeyance since January 29, 2021, pending issuance of a decision by the United States Supreme Court in *Gary*). Thus, Shannon may raise his *Rehaif* claim on collateral review in a § 2255 motion only if he can first demonstrate either cause for the procedural default and resulting actual prejudice or that a miscarriage of justice would result if the court refused to entertain his collateral attack. *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) ("In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."). To demonstrate a miscarriage of justice, Shannon must show he is actually innocent of violating §§ 922(g)(1) and 924(a)(2), as alleged in Count 2, by clear and convincing evidence. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Mikalajunas*, 186 F.3d at 493. Shannon makes no claim of actual innocence.

### B. Shannon Has Not Demonstrated Cause.

Having concluded Shannon procedurally defaulted his *Rehaif* claim on collateral review, the court now turns to consider whether Shannon can demonstrate cause for failing to raise such a claim on direct review. The existence of cause ordinarily requires the prisoner to show some objective external impediment prevented his counsel's efforts to construct or raise the claim. *Murray*, 477 U.S. at 492. Shannon makes no attempt to make this showing. Accordingly, the court will not address the point further except to recognize this court has already rejected a § 2255 movant's argument to the effect the novelty and futility of raising a *Rehaif*-type claim pre *Rehaif*

16

in light of binding contrary Fourth Circuit precedent demonstrated cause for failure to raise it on direct review.  *See Asmer*, Cr. No. 3:16-423, 2020 WL 6827829, at *5–7 (the instant court relying on *Bousley* and *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) to reject § 2255 movant's argument novelty and futility of raising *Rehaif*-type claim pre *Rehaif* demonstrated cause for failure to raise it on direct review); *see also Clay*, 833 F. App'x at 663 (in context of § 2255 motion, holding defendant could not demonstrate cause for failure to raise *Rehaif*-type claim on direct review); *United States v. Duell*, Cr. No. 15-87, 2021 WL 858445, at *4 (W.D. Penn. Mar. 8, 2021) (same); *Bradford v. United States*, Civ. No. 3:20-cv-00526, 2021 WL 561369, at *3 (M.D. Tenn. Feb. 16, 2021) (same), *appeal filed*, No. 21-5182 (6th Cir. Mar. 1, 2021); *Cross v. United States*, Civ. No. C19-4051-LTS, 2020 WL 7062686 (N.D. Iowa Dec. 2, 2020) (same); *Wilson v. United States*, Civ. No. 3:19-cv-280-RJC, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (same), *appeal dismissed*, No. 20-7436, 2020 WL 9148121 (4th Cir. Nov. 30, 2020); *United States v. Battle*, Cr. No. 16-017, 2020 WL 4925678, at *5–6 (W.D. Penn. Aug. 21, 2020) (same), *appeal filed*, No. 20-2726 (3d Cir. Aug. 25, 2020); *United States v. Vasquez-Ahumada*, Cr. No. 5:18-cr-00005, 2020 WL 3213397, at *3 (W.D. Va. June 15, 2020) (same); *United States v. Mayo*, Cr. No. 4:12cr00032-003, 2020 WL 2476167, at *2 (W.D. Va. May 13, 2020) (same); *United States v. Bryant*, Cr. No. 11CR765, 2020 WL 353424, at *2–3 (E.D.N.Y. Jan. 21, 2020) (same).  As in *Asmer,* there were no objective external impediments preventing Shannon from raising a *Rehaif*-type claim on direct review.  Accordingly, Shannon has not demonstrated cause to excuse his failure to raise his *Rehaif* claim on direct review.

### C. Shannon Has Not Demonstrated Prejudice.

17

Because Shannon failed to demonstrate cause, he cannot avoid the procedural bar to the court considering his *Rehaif* claim on the merits in the instant § 2255 motion under a cause and prejudice analysis. Accordingly, the court need not analyze the prejudice prong of the cause and prejudice analysis. However, for the sake of thoroughness, the court will proceed to consider whether, assuming *arguendo* Shannon demonstrated cause, he can demonstrate prejudice, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray*, 477 U.S. at 494).

### 1. Actual Prejudice Is Not Presumed Here.

To the extent Shannon's § 2255 motion can be reasonably construed to assert he is relieved of the burden of establishing actual prejudice to excuse his procedural default in light of *Gary's* holding *Rehaif* error in the guilty plea context constitutes structural error, *Gary*, 954 F.3d at 206, this court rejected the same argument in *Asmer*, relying on the procedural distinction between direct review and collateral review to hold a defendant must demonstrate actual prejudice resulting from *Rehaif* error in a cause and prejudice analysis despite *Gary's* holding that, on direct review, *Rehaif* error is structural error, resulting in presumed prejudice under a plain-error analysis. *Asmer*, Cr. No. 3:16-423, 2020 WL 6827829, at *8–10; *see also United States v. Moore*, Cr. No. 4:12 CR00030, 2021 WL 302745, at *3 (W.D. Va. Jan. 29, 2021) (relying on distinction between direct review and collateral review to reject argument *Gary* requires court on collateral review to presume defendant was prejudiced by *Rehaif* error in guilty plea context); *United States v. Claytor*, Cr. No.

18

7:15CR00070, 2021 WL 62272, at *5 (W.D. Va. Jan. 7, 2021) (same); *Merritt v. United States,* Cr. No. 4:10-cr-54, 2020 WL 6568315, at *5–6 (E.D. Va. Nov. 9, 2020) (same); *Cherry*, 2020 WL 6480921, at *2 n.2 (same). For the reasons set forth in *Asmer,* the court rejects Shannon's argument he need not establish he was actually prejudiced by the *Rehaif* error at his guilty plea hearing in order to satisfy the actual prejudice prong of a cause and prejudice analysis. *Asmer*, Cr. No. 3:16-423, 2020 WL 6827829, at *8–10.

### 2. Shannon Has Not Demonstrated Actual Prejudice.

To show actual prejudice on collateral review, Shannon bears the burden of demonstrating the *Rehaif* "error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher*, 126 F.3d at 572 (quoting *Murray*, 477 U.S. at 494). Here, Shannon must show that, because of the court's *Rehaif* error at his guilty plea hearing, he was prejudiced by the denial of an entire judicial proceeding to which he had a right. *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (on § 2255 motion, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (when raising a forfeited attack on guilty plea on direct review under plain error standard, defendant can only demonstrate Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea").

19

Shannon makes no attempt to demonstrate the *Rehaif* error worked to his actual and substantial disadvantage. Indeed, he makes no assertion to the effect, but for the *Rehaif* error, he would not have pled guilty to Count 2 and instead would have insisted on going to trial. He also makes no assertion to the effect, had he gone to trial, a jury would likely not have convicted him. Under this state of affairs, the conclusion is foregone Shannon has failed to meet his burden of establishing actual prejudice on collateral review.

Although the court could correctly end its actual prejudice analysis here, the court notes the undisputed evidence in the habeas record powerfully corroborates this conclusion for it ably demonstrates: (1) the Government could have presented a strong case against Shannon on the missing *Rehaif* element for which he had no viable defense; and (2) pleading guilty to Count 2 offered Shannon a better outcome than he most assuredly would have achieved had he gone to trial. The Government's obligation to prove a defendant's knowledge of his felony status is not burdensome, as "knowledge can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

Here, Shannon admitted in the factual basis for his guilty plea that as of February 15, 2016, he had been convicted of a crime punishable by a term of imprisonment exceeding one year. ECF No. 62 at 48. In addition, as set forth in the final version of the PSR to which Shannon had no objections, Shannon has no less than six South Carolina state court convictions for crimes punishable by a term of imprisonment exceeding one year. ECF No. 49 at ¶¶ 30–33. For all of these convictions, he never received any pardons or restoration of his rights to legally own or possess a firearm. ECF No. 49 at ¶ 22. For one of these convictions, he received a sentence of imprisonment not to exceed six years and for another a sentence of imprisonment not to exceed

20

three years. *Id.* at 31. Moreover, for each of these convictions, the summary judgment record contains the State of South Carolina's Judgment and Commitment form, entitled "SENTENCE SHEET," signed by Shannon attesting he pled guilty to the offense listed and setting forth his sentence. ECF No. 65-1 at 1, 65-2 at 1, 65-3 at 1, 65-4 at 1, 65-5 at 1, 65-6 at 1. Additionally, the summary judgment record contains a document entitled "PLEA WAIVER FORM," ECF No. 65-5 at 3, which Shannon signed in connection with his 2014 state court conviction for assault and battery, second degree, acknowledging the offense carried a potential penalty of up to three years imprisonment. *Id.* at 3, 6. Had the Government put this evidence before a jury on the missing *Rehaif* element, which it easily could have done and for which Shannon had no viable defense, the jury in all likelihood would have found, on or about February 15, 2016, Shannon knew he had been previously convicted of at least one crime punishable by a term of imprisonment exceeding one year. Moreover, not to be overlooked in the actual prejudice analysis is the fact, if convicted on Count 2 following a jury trial, Shannon would have lost his three-level decrease in his total offense level for acceptance of responsibility by pleading guilty, thus increasing his advisory sentencing range under the Guidelines from 46 to 57-months imprisonment to 63 to 78-months imprisonment. USSG Ch. 5, Pt. A (Sentencing Table) (2016). Given the district court sentenced Shannon to the lowest end of his Guidelines range on Count 2, if convicted on Count 2 at trial, Shannon likely would have received a sentence at least 17 months longer than he received by pleading guilty to Count 2.[9]

---

[9] The court notes, in exchange for Shannon's agreement to plead guilty to Counts 2 and 3, the Government agreed to and did move for dismissal of Count 1 of the Indictment, charging Shannon
Footnote Continued . . .

21

When the overwhelming strength of the case the Government could have presented at trial on the missing *Rehaif* element is considered with the benefit of the bargain Shannon would have lost had he not pled guilty, the likelihood Shannon would have chosen to roll the dice at trial on Count 2 had he known about the missing *Rehaif* element prior to his guilty plea is nil. Most importantly, Shannon himself has not asserted he would have made this choice.[10] Thus, Shannon has not demonstrated the *Rehaif* error worked to his actual and substantial disadvantage, which is his unavoidable burden on collateral review. Specifically, Shannon has not demonstrated by a preponderance of the evidence he would have rejected the plea had the court informed him, in order to convict him on Count 2 for violating §§ 922(g)(1) and 924(a)(2), the Government would have to prove he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearm and ammunition on or about February 15,

---

with possession with intent to distribute and distribution of a quantity of cocaine base, commonly known as "crack cocaine," a Schedule II controlled substance; and Xanax, a Schedule IV controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D) and (b)(2). ECF No. 3 at 1. Because the PSR states "[t]he plea agreement had no significant impact on the guideline calculations in this case," the court does not rely on any benefit Shannon received via the dismissal of Count 1 in its actual prejudice analysis. ECF No. 49 at ¶ 75.

[10] This case is easily distinguished from *Lee*, where the defendant satisfied the prejudice prong on his ineffective assistance of counsel claim in a § 2255 motion because, although he had no real defense to the charge of possessing ecstasy with intent to distribute and would have received a lesser prison sentence by accepting a plea rather than going to trial, he had "adequately demonstrated the reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation." *Lee*, 137 S. Ct. at 1967.

22

2016, as alleged in the Indictment.[11]  In sum, Shannon has not demonstrated he suffered actual prejudice flowing from the *Rehaif* error in his case.

Accordingly, assuming *arguendo* Shannon timely filed his § 2255 motion, the court grants the Government's motion for summary judgment in full and dismisses Shannon's § 2255 motion with prejudice.

### V. Conclusion.

Because Shannon did not file his § 2255 motion, ECF No. 56, within the one-year period of limitation provided in § 2255(f), the court dismisses it as untimely and with prejudice. Assuming *arguendo* Shannon timely filed his § 2255 motion, because Shannon procedurally defaulted his *Rehaif* claim without establishing cause and prejudice or his actual innocence to excuse the default, the court alternatively grants the Government's motion for summary judgment in full and dismisses Shannon's § 2255 motion with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

---

[11] Given Shannon's failure to demonstrate cause and prejudice to excuse his procedural default, his failure to assert his actual innocence to excuse such default, and the lack of any viable defense, the court does not specifically address the issue of Shannon's actual innocence.  Suffice to say, Shannon has not shown he is actually innocent of violating §§ 922(g)(1) and 924(a)(2) by clear and convincing evidence.

23

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

      **IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
May 26, 2021

24